We have four cases for argument today. The first one is GO1 v. OpenSesame, 24-1762. Mr. Mangels, when you're ready. May it please the court, good morning. What the board did in this case was elevate a trivial sequencing detail into the linchpin of patentability, and only because the prior art did not spell it out explicitly. That's precisely the rigidity that KSR prohibits. The board assumed that everything was taught except providing the URL to the proxy before rather than after license verification. Why do you say assumed? Because the board made no findings on any other limitation but this one, and so that's the only limitation before this court. The only question is whether, the only finding the board made is that it wouldn't have been obvious in combining Sperl and Madison to flip the order of when the redirector file or a proxy in that combination would have received a URL. Would it have gotten it before rather than after license verification? Wasn't it that the board felt that it had been proven that it would have been used in particular because of conclusory expert testimony? And I think if I remember correctly, the original petition doesn't even address this particular order issue. So the board did make an affirmative finding on the merits, you're correct, and did not find forfeiture as you're mentioning the petition. I'm not suggesting forfeiture, I'm suggesting lack of evidence, lack of an explanation or lack of evidence. Sure, so the evidence came in at replies all, I meant to clarify, which is at our reply at 431 to 432, and our expert's testimony of 1492 paragraph 91, and he explained that it would have been inconsequential. There would have been no material difference. That isn't. What did he cite for the idea that there would be no material difference? He said that a skilled artisan would not have found it different, essentially saying that it's functionally the same. So he's giving his knowledge. That's just a conclusion. What technical explanation did he provide to support that conclusion? So I think there's two important points here. First of all, what he said was informed by the context of the rest of his testimony on all the limitations that the board did not address. And so I would point this court to our reply before the board at appendix 424, where we cited his declaration, we cited Spurl, we cited Madison, and we cited other sources of evidence. And we said, license checks were commonly known in the art and a posita would have known how to implement them without the need for extensive details or an identical disclosure. That is undisputed in this case. And in fact, the patent itself reflects that. But again, I don't need to interrupt you, but that just sounds like a conclusion. So it is not a conclusion. He is affirmatively stating that it is inconsequential and it is undisputed and the patent reflects that license verification is known. That is more than a conclusion. That is stating that there is no functional difference. That is an affirmation. I mean, certainly it's, I mean, everybody knows that getting verification before getting content is different from getting verification after content. And there are lots of contexts in which that's important. But again, applying it to the facts of this case to find some motivation to alter some of the teachings of the reference to make this work in this combination requires a bit of explanation that I find missing and the board found missing. So I disagree, Your Honor. I think this is a question of the legal standard applied. And what I hear from Your Honor and what I heard in the board's decision was, yes, a demand for technical explanation. And this court's cases are clear until VPAC says that modification just needs to be suitable. There doesn't need to be a categorical improvement over the prior art. And so- I agree with you. What about the question of whether it's even obvious design choice? I mean, that it is a design choice or that there was no explanation that, or even support for why it was known to switch the order, why both orders would be possibilities. I mean, I realize it is rather simple technology, right? I mean, what we're talking about. But it's a lack of explanation that's the problem and finding an error by the board below when the limitation wasn't addressed is difficult. I mean, for example, in the blue brief at page 37, there are some excellent citations to things in the patent suit or in the record that would support the existence of this as a possibility, right? But this was not something that was provided to the board or wasn't provided to the board at the bottom of page 37 in your blue brief. So what was provided to the board were the sorts of things I was referring to at appendix 424. I read that, sure. Which license verification is undisputedly well known. And so I think everyone was taken aback that the board decided on this ground. It assumed that the proxy was taught. It assumed that providing a URL is taught. It assumed all these things and it only made its decision based on this sequencing detail, which is a trivial aspect of the claims. We know that because not only did our evidence- I don't think, but what about the answer to my question? Just to make sure I understand, what is the material at the bottom of page 37 in the blue brief cited to the board in the expert opinion or in your brief on this particular claim element? You're talking about the intrinsic evidence from the patent itself? Yeah, it says the board was, it says there's evidence showing that verifying first would have been an obvious design choice. It says see appendix 48, 123 to 27. See appendix 49, 3, 19, 21. It goes on and on. And I'm asking whether this material was provided to the board in this format at the time in your reply brief or in the expert's declaration. I think it's a yes or no question. Yeah, so the answer is no, not everything was provided. But there was certainly a lot provided. So again, I would urge this court to look at appendix 424 of our reply where we explained and we cited our expert's reply declaration that license verification was well-known. And we cited Spurl, we cited Madison, we cited portions of his expert report. I mean, I think your problem isn't that license verification is not well-known and not even that it wouldn't have been obvious to do these in either order. It's just a failure of proof that the board found. And you're here on a substantial evidence review. I know you want to make this a legal error. I don't see any legal error here. And I, as a fact finder, probably would agree with you. But the board didn't. And isn't there enough in the record to support the notion that a skilled artisan wouldn't have had a motivation to combine these two because you didn't explain more than just saying, having your expert who is a skilled artisan, but gave the very conclusory testimony that basically this is just a design choice. Anybody would understand it goes both ways. That could have been enough maybe because he is a skilled artisan, but the board found it insufficient. So I hear you, Your Honor. I understand the concerns. But we know from Intel v. Qualcomm and other cases from this court that the level of explanation that's required depends on the context. How simple and straightforward is this? We are talking about the sequencing of two steps. It is inherent in license verification. If it had gone the other way, and that's the evidence you had as substantial evidence, then I think you would win. But I think the problem is there's not such a lack of substantial evidence in your favor to find that no reasonable fact finder could agree with the board. I disagree, Your Honor. The other side has not disputed that it would be suitable and it would work. And that is the standard under the known technique rationale. No, but you're trying to, again, I am very sympathetic to your view of this case. What you're trying to do is abstract this choice outside of the specific prior art references here that you asked the board to combine and have specific evidence for why those references would do it this way, rather than just this general notion, it doesn't make any difference whether you do verification first or second. You're absolutely right. I think it makes very little difference, and I don't see any argument from them that it makes any difference. I think that in the abstract, I think it's just the problem the board found was there's no reason a skilled artisan would combine these two specific references to do that. And absent some kind of overwhelming evidence based upon your expert's declaration and these two references, I have a hard time finding a lack of substantial evidence. I hear you, Your Honor. They had a chance for a surreply and a supplemental declaration. They did not rebut this. So there is no contrary evidence or argument from them. This court has found, as a matter of law, cases like Tokai, cases like Perfect Web, cases like C.R. Bard, that flipping the order in these limitations, MoneyGram is another case we cited, can be trivial and can be as a matter of common sense. And there doesn't need to be this technical explanation. Again, the question is suitability. And I would urge your honors to just carefully look at what our expert said. It was thin, but it was something. It said that it would have not made a difference. It was inconsequential. And they produced no evidence or argument otherwise. And I agree with you. I was just going to ask you, what is the standard, you think, for reviewing the board's determination that the expert testimony was conclusory, because that seems to me what the board held here. It was conclusory, which then would mean that you didn't establish enough of your burden to then have any sort of burden fall on the other side. I think regardless of whether you look at it as a de novo matter of legal error or a substantial evidence matter of whether they analyzed the evidence correctly, they were incorrect, either standard of review. We have put forward suitability. That is all that is required. And they did not rebut it. I hear you that the prior art didn't explicitly teach it, but we're talking about obviousness, not anticipation. And we did enough. I see that I'm into my rebuttal time. And so I will reserve the rest. Thank you, Mr. Minnis. We'll save your rebuttal time. May it please the court. There's no question that appellant here bears the burden of persuasion on invalidity. And that never shifts. During my colleague's presentation here, he talked about what we didn't do and that sort of thing. Sure, I understand that. I mean, this does seem pretty obvious to me, too. I mean, the ordering of these two steps seems to make no difference. Everybody seems to understand that it makes no difference. The expert's testimony, though, as he says is thin, is from a skilled artisan who, based upon his knowledge, could testify to that. And that could be evidence. Why isn't the board's decision here lacking in substantial evidence? Well, I think there's several reasons, Your Honor. First of all, if you look at the limitation at issue, it's not just the order of events. It's the licensing reporting server that verifies the status of the user license to a specific instance of content. And upon verifying the license, sends instructions to cause the licensing reporter server to provide to the proxy a location designator for accessing the content player. It's not just the order. And if you look at the prior art, first of all, neither of them come close to teaching that specific, that there even is a licensing reporter server. That's not the basis upon which the board decided, right? What's that? The basis upon which the board decided was the order, right? The basis upon which court decided was that limitation was not satisfied, and they did not provide substantial evidence to support the finding of invalidity. Based upon the order. Based upon the order, right. Did I answer your question, Your Honor? Well, you're trying to run away from the central question, which is, is the ordering obvious or not, by saying, well, there's a lot more in here than ordering. But that's not what the board found. The board found it was based upon, they didn't show that it was done in this specific order. With respect to Spurl and Madison, which were the references that were cited. And Spurl has nothing to do with the order or anything. There's no disagreement that all the elements are shown. This boils down to a simple, would you combine these two references to reach the patent claims? And all the underlying elements are there. The only thing the board found missing was that these references didn't teach the specific order. Well, I think that the order is so obvious that it's just common sense. Why isn't it true that the board's decision just violates a bunch of our case law and the Supreme Court case law on, you can use ordinary creativity? Because the board correctly found that Appellant did not meet its burden. And that's. That's begging the question. The question is, if all that's at issue is the order of this, and it's simply a pure design choice, everybody understands these things could be done in either way. It has no real patentable weight. All the skilled artisans at the time would have made no distinction in the order. And isn't his testimony, his expert's testimony, basically saying all that, sufficient to make the combination? And the board's rejection of that doesn't rely on any evidence. Because they're doing it as a failure of proof. They're not doing it based upon affirmative evidence you've shown that a skilled artisan wouldn't have combined it. Well, it's kind of the different sides of the same coin. They found that Appellant did not satisfy its burden of providing substantial evidence to satisfy this claim. So if we find they did satisfy their burden based upon this expert testimony, and the fact that this is a very, very simple design choice, everybody knew it, and that that's in the record, so the board is wrong that they didn't satisfy their burden. Is there anything to support the board otherwise? If you look at the. Did you put in evidence from an expert saying, nobody would have done the order in this way? We put in evidence at Appendix 384 to 389 describing Madison and describing the methodology they used, which have nothing to do with, that doesn't really read at all. That doesn't answer my question at all. Did you put in specific evidence that said no skilled artisan would have understood to do the licensing in this order, the license check and whatever in this order? The specific licensing order, I don't think that was. The specific order that's at issue. I mean, we're talking about one thing. The board found a lack of proof to do. I can't remember what the specific order is, but you know what I'm talking about. The board found a lack of proof to do the order in the way your patent claims. Did you put in any evidence that a skilled artisan would never have understood to do it your way? And so that's why you can't combine those two references because they do it the other way. We, at Appendix 384 to 389, we describe Madison and how that system does not work. We did not put in. Did you, in that 384 to 389, did you talk about how it wouldn't make sense to change Madison such that it would verify the validity of the license before giving a URL for the content? Yes, because the system in Madison. Where is that, specifically? Well, I think it's at 384 to 389 where we. No, I want to know, on those pages, which sentences are you relying on? I think it's 389. Yes. Yes, Your Honor. The discussion there talks about the process of Madison. There's no, which, again, out of our burden, they didn't really put anything in. I think you said this is before they filed their reply. Correct. And you say that they essentially ignored the required claim language that relates to the order. And then in response, they put in a declaration from their expert, which the board then said was conclusory.  Right. Did you present any other evidence about how? I think what I understand the expert, the theory they're arguing is that KSR, obvious design choice. There's two options. And a person of ordinary skill in the art would have known to pick one of them, right? Could pick either one of them. Either one of them would be fine. That is what they're arguing, right? Well, I think we take the position that they didn't prove their burden. But yes, that the- What exactly didn't they prove? That's what we're trying to figure out. What are you saying? They didn't provide to the board evidence of how Madison could be modified. No, so you're arguing the wrong standard now. We've said over and over again that you don't have to specifically show how something will work with the modification. All that's at issue here is the order. And the order doesn't, I mean, he cited us a bunch of cases that just said, rejected exactly what you're trying to say. And so what we're looking at is, did they prove that the ordering choice, and there's two, right? You agree there's two, because it's only two steps, is an obvious design choice that anybody at the time would have made. Not that you would have modified this specific reference to do it in this specific way. When it's something like this, that's not what we require. That's not what KSR requires when we're looking at this specific ordering choice. Because it doesn't make any difference to the references otherwise. I agree that there are cases that do say that. I think our position is that they needed to provide more than what they provided for us to respond to, and they failed to do that. The board found that they failed to do that. I mean, we reversed the board for being overly technical in this analysis of obvious design choices multiple times. And this one seemed very close to that line, that they presented an obvious design choice that skilled artisans at the time would have known, and would have known that it made no difference. And so that's why you could have combined these two references to come up with a patent invention. And they have testimony from their expert saying that. The board found it was conclusory, but I don't know what more you need when it's such an obvious design choice, and there's only two choices. Do it one way or do it the other way. So the expert report that the board was looking at is at page A1491 to 1492, right? And the question really is whether there is sufficient any, like, was he able to say these things, assert these things without evidence? And it's also written in a little bit weird way. Well, what does it mean when he says a procedure will not require Madison to specify proxy instructions that operate in an identical manner to claim element 1G to 1H in order to be motivated to combine the disclosures of Madison and Spurl with a reasonable expectation of success? It's a little confusing. What do you understand that to mean? I was having a hard time hearing you, Your Honor. Can you give me the page again? Maybe you want to look at page A1491. This is the evidence that is relied on to support that there's two design options here. And so about halfway through the paragraph, after the words, I disagree, there's a sentence. And it starts, APSITA would not require Madison to specify proxy instructions. How do you understand that sentence?  Can I hear the question again? I found the slide. OK, so I think the key question for me is whether the board erred in finding that the words of the expert on pages A1491 and 92 are substantial evidence or not. That's at least part of what I'm looking at. I want to know what your thought is on that question. And in doing so, I was pointing you to a particular sentence. But you can answer the question more generally if you want. Do you have a response to whether this language here, because there's a lot of it, is substantial evidence or not? Our position is that the appellant did not provide substantial evidence on this issue. And again, appellant started by saying, please be as specific as you can. OK, well, again, as the board found, the appellant just relied on conclusory statements, which this court has found a number of times is not sufficient for a finding of invalidity. Why is what she just read to you conclusory? It's actually more specific about the specific references. It doesn't just state a legal conclusion that it would have been obvious to combine these two references. That's conclusory. Giving a specific factual opinion about the references, even if it's in one or two sentences, is evidence. It's not a legal conclusion. And the following sentence is probably more specific. I mean, one of the questions here is, can an expert, a person like Mr. Almoroff, say these things without any support? Is it enough based on his own knowledge, in other words? And one of the things he says is, there is no practical difference between the request for streaming data content in combination with an authorization ticket that is provided back to the network for verification and requesting verification of the validity status of the license to the specific instance of content. In other words, you could flip it. There's no difference between the order here. And so that is the big key question that we are tasked to answer today. Yes, yes, Your Honor. And I think the answer is no, that it's insufficient. There's no detail in explaining. And I understand that the court has cases which say you don't have to go through the prior art specifically. But this is such a broad-based conclusory statement that it falls well short of those cases and the facts in those cases. If you look at what Madison actually does. If it's so simple, why do you need detailed explanation if it's something so basic? Because it's not that basic, Your Honor, if you look at the context of the entire claim and this specific reference itself. Entire context of the claim. We're looking at the sole reason the board found it non-obvious was you taught a certain order. They didn't show that order. That is basic. Yes, the board found that Madison Sperling, that the expert and appellant did not satisfy their burden to show how Madison Sperling. And the reason why they found it is because of the expert's testimony that we're going through right now is conclusory. And so I'm trying to figure out whether they're correct. So what if we don't think that the expert's testimony is conclusory? What if we say, we look at this and we say, well, he says there's no practical difference between these. I think the board is the fact finder in this situation and whether there's substantial evidence or not. And I do think that even this language that Your Honor is citing falls well short of what's necessary to establish substantial evidence of invalidity. And if you look at the teachings of Madison, it doesn't even have a licensed reporting server. It has a playlist server, web server. Tickets are created. Redirector files are created. All of that the expert would have needed to use to teach how that could satisfy the limitations. But that would be something for the board to decide on remand, right? Well, I don't think the board needs it. The board already decided it. It's an evidentiary level of the test here. They did not. This is my question. Do you think the board found that the other claim elements were satisfied? Oh, no. By no chance. There's eight other claim elements that were identified. The board said, because we find element 1F to be lacking, appellant hasn't satisfied its burden. So the board's wrong on this point. We can't just reverse. We have to send it back for them to look on these other claim elements. Absolutely, yes. You're beyond your time. Appreciate it. Thank you. Mr. Munoz, since he went over, I'm going to give you your whole five minutes back. Thank you, Judge Hughes. So they have conceded in their reply brief at 26 that the only limitation at issue is this 1F providing a location designator. I think I heard my friend just concede that oral argument as well. Yes, we put in affirmative evidence on that point. Our expert testified that it would have been inconsequential and made no practical difference. As an expert, he is entitled to testify from his skill as a perspective as an ordinary artisan. And they had the opportunity to do so. They had a surreply. They had a supplemental expert declaration. They could have said what a technical difficulty was, what something was unique about this. They said nothing. They just said, and I would point this court to their surreply at 506 to 507 and their expert declaration at 2934 to 38. They just said it wasn't explicitly taught. It wasn't disclosed. They didn't come back with anything. So this is entirely on all fours with a case like PerfectWeb where we have to take the board's decision as we found it. They have assumed everything is taught. Now, I agree. There needs to be a vacater and remand for them to make affirmative findings on the other limitations. But that's the only thing I heard my friend argue about in terms of what wasn't obvious about this. In terms of the sequencing, there is no dispute that it would have worked. It would have been suitable under Intel VPACT. And we know that from common sense. Again, we're taking the board's analysis that everything's taught. Just think about going to a library. It doesn't make a difference whether a librarian pulls a book off the shelf before or after scanning your card. It still works either way. That's the case. I mean, I feel like we've reversed in very similar situations where the board has applied an overly mechanical technical view of the prior art and required the petitioner to show more than what's a very simple design choice. What's your best case or two for that? So I think our best case is going to be, we cite a litany of cases at 25 to 26. I think you can take your pick. Those are all predictable variation, two-choice cases. So CR Bard's an example. But these are all matter of law reversals because the board is presented with a situation where there's just two choices. The patent did it one way. The prior art did it another way. And you can still use common sense, ordinary creativity to satisfy a missing limitation in that context. Can I stop you for a minute on that? I don't know that I think it's okay for the board to use common sense given we're in this APA context and they're really stuck in IPRs with what the parties have put in front of them. So what do you think is the best thing in Mr. Almiroth's declaration to support what you're saying? So I think there are, I think the best thing he says is he says a lot of things, I think. But at 1492, at the bottom of paragraph 91, he says that a posita would view them as insubstantially different, if indifferent at all. And before that, he talks about how the posita wouldn't require, this is the language I think you were referring to, a little earlier you were asking what it meant. They wouldn't require Madison to specify proxy instructions that operate in an identical matter to be motivated to combine to reach the purported invention. That's simply the bodily incorporation point. He's testifying from his stance as an expert. Okay, literal combinability is not the standard. The standard is just obviousness of combining the teachings. And a posita wouldn't have had any problem with that. It wouldn't have been different is basically what he's saying there. I have one more question for you, which is I understand your argument to be relying on not the typical RAM VD or it would have been obvious to modify this reference and do that reference. Instead, you're relying on this new, a little slightly different KSR idea that when you have two equally viable choices, it can be, that can be enough. You don't have to necessarily show a separate motivation other than if there's two equally viable choices, right? Where do you think in your reply brief that was made clear to the board that that was the theory under which you were operating? So I think what you're identifying as new is just a species of the argument of ordinary creativity, which we squarely put in front of the board at our reply for 31 to 32. We invoked KSR. We talked about ordinary creativity. Intel V-PACT is clear that that line of cases, this is the known technique sort of rationale is a strand of that. That's precisely where we're at based on the expert testimony. He's saying it wouldn't be different. It would have been suitable is the upshot of that. That is the standard under Intel V-PACT. We've made an affirmative showing on that. Mr. Mendenhouse, I agree with you that a detailed technical explanation is not necessary. That's certainly established in several of our cases. But this is more complicated than, for example, the facts in Perfect Web. And the board here simply found that the declaration was not enough, that the technical explanation was insufficient to even meet the low standard. And our substantial evidence review is a difficult burden to overcome. Where does that leave us? So again, I would answer that I think the crux of this case is the board's analysis, right? The board accepted that everything else was taught. So I would push back that this is actually more complicated than Perfect Web. In Perfect Web, you had all the steps taught. The question is whether repeating them would have been obvious. Here, the board has assumed everything is taught, including these two steps. It's just the sequencing, flipping them is not. But flipping the sequence was, you know, was something the board felt took some effort and was not obvious or apparent from even the declaration, as opposed to Perfect Web where we pretty much accepted there was no other real choice, but to repeat the steps that were already set forth, steps one, two, and three. So there's a difference. And, you know, like Judge Hughes, I appreciate your argument. And I think that, you know, if we were deciding this in the first instance, maybe we would come out the other way. But given the standard of review, it's difficult for us. Is it not to say that the board here just had no substantial evidence to support its conclusion? I don't think so. We've cited a litany of cases from 25 to 26 of our opening brief, 30 to 33 of our opening brief, where this court has reversed as a matter of law in analogous circumstances. So no, I disagree. And- Those cases involve expert testimony with no record sites or evidence other than the expert saying what his view is as a person of ordinary skill in the art. There are cases like Weyers where it is just a matter of common sense. Perfect Web, similarly, it wasn't in the board, but it was just a matter of common sense. And the expert, that's what the expert testified to. So I do think, yes, there are cases reversing or making matter of law determinations of this court on those facts. Yes. Okay, we have your arguments. Case is submitted.